JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Charles Johnson ("Johnson") appeals his convictions for trafficking in counterfeit controlled substances, with juvenile and schoolyard specifications, and possessing criminal tools entered by the Cuyahoga County Court of Common Pleas after a jury found him guilty of the offense. For the reasons adduced below, we affirm in part and reverse in part and remand
 {¶ 2} Johnson was charged in a two-count indictment with trafficking in counterfeit controlled substances in violation of R.C. 2925.37, with schoolyard and juvenile specifications; and possessing criminal tools in violation of R.C. 2923.24. The following facts adduced at trial relate to the offenses for which Johnson was charged.
 {¶ 3} On November 7, 2002, Officer Michael Demchak ("Demchak") of the Cleveland Police Department, was working an undercover drug operation in the area of East 55th Street and Fleet Avenue. Demchak was in an undercover vehicle driving to street corners looking for people selling crack cocaine. While conducting this drug operation, Demchak observed Johnson riding his bicycle in Slavic Village near East 55th Street. Demchak testified he pulled up to a stop sign at East 65th Street and Fullerton Avenue, looked over at Johnson, and Johnson gave him a nod. Demchak rolled down his window as Johnson approached the passenger side of the vehicle. Demchak told Johnson he wanted $20 worth crack cocaine. Johnson then instructed Demchak to meet him at KS Food, a convenient store at the corner of East 65th
Street and Fleet Avenue.
 {¶ 4} Demchak pulled into a parking lot at the designated location. Johnson arrived on his bicycle. Demchak testified that Johnson seemed to recognize him and asked if Demchak was the police. Demchak responded that he was not the police and again asked for $20 worth of crack cocaine. Johnson, while saying to himself "man, you are the police talking like this," reached into his pocket and pulled out what appeared to be a rock of crack cocaine and exchanged it with Demchak for $20.
 {¶ 5} Demchak testified that as he was pulling out of the parking lot he noticed "several school kids hanging out in front of the store" who were "[15], 16, in that area." Upon further questioning, Demchak guessed there were three or four school kids at the food store and "[t]hey were within maybe 20 feet" of where the purported drugs were sold. Demchak also testified that KS Food was within 1,000 feet of Fullerton Elementary School. A map depicting the elementary school as within a 1,000-foot radius of KS Food was stipulated to by the parties as being drawn to scale.
 {¶ 6} Demchak proceeded to radio other officers to "take down" and arrest Johnson. Demchak observed Johnson being arrested, which was within 30 seconds of the purchase. Although Johnson was not in Demchak's line of vision the entire time, Demchak testified he was sure Demchak was the man who sold him the rock because he "knew him from before."
 {¶ 7} The rock that was purchased tested negative for a controlled substance. The buy money, which was photocopied, was not recovered from Johnson. However, Demchak testified there was no strip search conducted; it was not routine to do so, and the police do not always find the buy money.
 {¶ 8} There were two other officers in the area who were positioned to watch the transaction take place. Officer Timothy Grafton ("Grafton") was positioned across the street from the transaction in a stationary vehicle. Grafton observed Johnson approach Demchak's vehicle on a bicycle and engage in a hand-to-hand transaction. Grafton testified he maintained constant surveillance of Johnson as Demchak pulled away, the take-down cars arrived, and Johnson was arrested. After Johnson was arrested and taken to another location, Grafton went to that location. Grafton testified Johnson was in the back of a zone car with a couple of other males. Grafton asked Johnson what he was doing, and the first thing Johnson said in reply was "the dope was fake." Grafton further testified that Johnson proceeded to state "the dope isn't real" and "I'm doing this because I needed to buy food." Grafton stated he was 100 percent certain that Johnson was the man that sold the rock and told him the dope was fake.
 {¶ 9} Sergeant Terrance Shoulders ("Shoulders") was the arresting officer. Shoulders testified he did not find the buy money on Johnson. Shoulders stated only a pat-down search was conducted at the time of arrest. Shoulders also confirmed that when Johnson was taken to the police station, the buy money was not found. However, Shoulders testified it was not uncommon for buy money to disappear.
 {¶ 10} At the conclusion of the state's case, Johnson made a motion for acquittal that was denied by the trial court. Johnson renewed his motion for acquittal after he rested his case, and the trial court again denied the motion. Upon the above evidence, the jury found the defendant guilty of trafficking in counterfeit controlled substances, with the schoolyard and juvenile specifications, and guilty of possession of criminal tools.
 {¶ 11} Johnson has appealed his convictions raising two assignments of error. Johnson's first assignment of error provides:
 {¶ 12} "I. Appellant's conviction for trafficking with a juvenile specification is not supported by sufficient evidence."
 {¶ 13} Under this assignment of error, Johnson's only argument is that the evidence was insufficient to sustain the juvenile specification. The testimony of Officer Demchak was only that he noticed three or four "school kids" hanging out in front of the store, they were "[15], 16, in that area," and "[t]hey were within maybe 20 feet" of where the purported drugs were sold. Johnson challenges the sufficiency of this evidence arguing Demchak provided no basis for his opinion as to the age of the "kids" he saw, Demchak provided no description of the "kids," and none of the "kids" testified in court.
 {¶ 14} When reviewing a challenge to the sufficiency of evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. Id. In essence, sufficiency is a test of adequacy. State v.Thompkins (1997), 78 Ohio St.3d 380, 386-387, 1997-Ohio-52. A reviewing court is to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id.
 {¶ 15} R.C. 2925.01(BB) provides:
"An offense is `committed in the vicinity of a juvenile' ifthe offender commits the offense within one hundred feet of ajuvenile or within the view of a juvenile, regardless of whetherthe offender knows the age of the juvenile, whether the offenderknows the offense is being committed within one hundred feet ofor within view of the juvenile, or whether the juvenile actuallyviews the commission of the offense."
 {¶ 16} R.C. 2925.01(N) defines a juvenile as a "person under eighteen years of age."
 {¶ 17} We addressed a similar argument in State v. Fannin,
Cuyahoga App. No. 80014, 2002-Ohio-4180, a case also challenging the sufficiency of evidence supporting a juvenile specification. In Fannin, the state had presented testimony of a detective who clearly distinguished between both "adults and children" who had been found at the home where drug activity was present. Id. The detective also testified that two children were known to live with their parents at the residence and that at least "one juvenile child" was theirs. Id. There was also evidence that other children, who may have been children of New York guests, were also present. Id. Thus, in the Fannin case, the detective had distinguished between adults and children, and there was evidence establishing children resided at the residence. Id. As we emphasized, the detective distinguished between adults and children, stating "possibly two other adults and some children." Id.
 {¶ 18} Unlike Fannin, in this case Demchak did not provide any details to distinguish the juveniles from adults who may have been in the area. Demchak did not provide any description of the juveniles upon which a rational trier of fact could conclude that their ages of "[15], 16, in that area" was accurate. The bare assertion that there were juveniles in the area, with no further description or evidence upon which their ages could be reasonably assessed, was not sufficient evidence to establish beyond a reasonable doubt that the persons observed were under eighteen.
 {¶ 19} Viewing the evidence in a light most favorable to the prosecution, we do not find any rational trier of fact could have found Johnson committed the offense within the vicinity of juveniles as required for the juvenile specification. Accordingly, we conclude that the juvenile specification must be vacated.
 {¶ 20} However, this does not affect the degree of the crime committed. Under R.C. 2925.37(H), trafficking in counterfeit controlled substances in violation of R.C. 2925.37(B) is a felony of the fifth degree, but is enhanced to a felony of the fourth degree "if the offense was committed in the vicinity of a school or in the vicinity of a juvenile." Because Johnson was also convicted of a schoolyard specification, the trafficking offense remains a felony of the fourth degree.
 {¶ 21} Johnson's first assignment of error is sustained.
 {¶ 22} Johnson's second assignment of error provides:
 {¶ 23} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 24} In reviewing a claim challenging the manifest weight of the evidence, we are directed as follows: "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 25} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court adopted the following guidelines set forth in State v. Mattison (1985),23 Ohio App.3d 10:
"(1) The reviewing court is not required to accept as true theincredible;
 (2) whether the evidence is uncontradicted;
 (3) whether a witness was impeached;
 (4) what was not proved;
 (5) the certainty of the evidence;
 (6) the reliability of the evidence;
 (7) whether a witness' testimony is self-serving;
 (8) whether the evidence is vague, uncertain, conflicting orfragmentary."
 {¶ 26} While considering these guidelines, we are mindful that the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169. Furthermore, the power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, 20 Ohio App.3d at 175.
 {¶ 27} Having already determined that the juvenile specification must be vacated, we need not again address that specification under this assignment of error. Therefore, we will first consider Johnson's conviction for trafficking in a counterfeit controlled substance with the schoolyard specification.
 {¶ 28} R.C. 2925.37, offenses involving counterfeit controlled substances, provides in relevant part: "(B) No person shall knowingly make, sell, offer to sell, or deliver any substance that the person knows is a counterfeit controlled substance." The statute further provides that the offense is a felony of a fourth degree if committed in the vicinity of a school. R.C. 2925.37(H). "An offense is `committed in the vicinity of a school' if the offender commits the offense * * * within one thousand feet of the boundaries of any school premises." R.C. 2925.01(P).
 {¶ 29} Johnson argues that the verdicts are against the weight of the evidence because the police failed to find the "buy money" even though there was constant surveillance of the suspect from the moment he took the money from Demchak to the time he was arrested. Johnson also argues the other males in the back of the zone car were arrested at or about the same time as he was and that the witnesses could have mistakenly identified Johnson as the one who committed the crime.
 {¶ 30} Our review of the record in this case reflects Demchak identified Johnson as the man who approached him on a bicycle and sold him the counterfeit drugs. Demchak testified he observed Johnson being arrested, which was within 30 seconds of the purchase, and that he was sure Demchak was the man who sold him the rock because he "knew him from before." Demchak also testified that the transaction occurred within the vicinity of an elementary school, and a map depicting the elementary school as within a 1,000 foot radius of KS Food was stipulated to by the parties as being drawn to scale.
 {¶ 31} Grafton also observed the transaction and identified Johnson as the person who sold the counterfeit drugs. Grafton testified that when he saw Johnson in the zone car, the first thing Johnson said was "the dope was fake." Grafton further testified he was 100 percent certain that Johnson was the man that sold the rock and told him the dope was fake.
 {¶ 32} Although the buy money was not accounted for, this fact alone does not establish Johnson was not the person selling the counterfeit drugs. The testimony of the officers who observed the transaction and identified Johnson supports a finding that Johnson was the man who sold the officers the counterfeit drugs with knowledge that the drugs were counterfeit. Since the weight to be given the evidence and the credibility of the witnesses are primarily matters for the finder of fact to determine, we accord due deference to the jury's determination. See State v. Grant
(1993), 67 Ohio St.3d 465, 477. Upon our review of the record, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice such that Johnson's convictions for trafficking in a counterfeit controlled substance and the schoolyard specification must be reversed and a new trial ordered.
 {¶ 33} We next consider Johnson's conviction for possessing criminal tools. The criminal tool that Johnson was charged and convicted of possessing was the bicycle he was riding. Although Johnson has not raised the issue of whether the bicycle constitutes a criminal tool, we shall address the issue under a plain error analysis.
 {¶ 34} Pursuant to Crim.R. 52(B), an appellate court may sua sponte consider plain errors. State v. Slagle (1992),65 Ohio St.3d 597, 604.[1] A plain error is an obvious error or defect involving substantial rights in the trial court proceeding. State v. Hunter, Cuyahoga App. No. 81006, 2003-Ohio-994. It is not grounds for reversal unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. Id. This court is mindful that "notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111.
 {¶ 35} R.C. 2923.24, possessing criminal tools, provides in relevant part: "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Criminal intent, must be proved beyond a reasonable doubt. State v. Whyte (Jan. 30, 1992), Cuyahoga App. No. 59779. Moreover, a conviction for possessing criminal tools will not be upheld absent a showing of an intent to use the device criminally. See State v. Hayley
(Dec. 2, 1999), Cuyahoga App. No. 74718; State v. Thompson
(July 18, 1991), Cuyahoga App. Nos. 58803, and 58834.
 {¶ 36} In the within case, the state utterly failed to show any such criminal intent. The only testimony provided in this case was that Johnson was riding his bicycle when he was first observed by Demchak and that he remained on his bicycle through the course of the counterfeit drug transaction. Demchak only testified that Johnson "used the bicycle to convey himself around the area there." When asked whether it was routine to ride a bike to survey the area in selling drugs, Demchak simply responded that "[i]t makes a quicker getaway, yes."
 {¶ 37} Since a bicycle does not fall within one of the circumstances which constitute "prima facie evidence of criminal purpose" under R.C. 2923.24(B), the state was required to prove, beyond a reasonable doubt, that appellant possessed or had control over this bicycle with purpose to use it criminally, without the benefit of the inference provided by this statute.
 {¶ 38} While a bicycle certainly could be used as a criminal tool in a drug transaction, the evidence in this case does not support a determination that Johnson had the intent to use the bicycle for a criminal purpose. The use of the bicycle was incidental to the offense involving the counterfeit drugs. Had the bicycle been used to conceal drugs or money, or had testimony been obtained documenting a pattern of activity concerning the use of the bicycle in drug transactions from this location, involving Johnson or other dealers, our analysis would be different. By the same logic, a dealer operating on foot would not have his shoes labeled as criminal tools unless the evidence demonstrated he had a purpose to use them criminally.
 {¶ 39} We conclude that Johnson's conviction for possession of criminal tools was against the sufficiency and the weight of the evidence. We further find plain error in the trial court's failure to grant Johnson's motion for acquittal on this count. Johnson's second assignment of error is sustained in part.
 {¶ 40} Accordingly, Johnson's conviction of the juvenile specification and conviction and sentence for possession of criminal tools are to be vacated upon remand
 {¶ 41} Judgment affirmed in part, reversed in part and remanded.
Ann Dyke, P.J., and James J. Sweeney, J., concur.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Crim.R. 52(B) provides "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."