[Cite as *State v. Collins*, 2011-Ohio-2660.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95422**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TONY D. COLLINS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-529965 and CR-533453

**BEFORE:** Celebrezze, P.J., Jones, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**     June 2, 2011

**ATTORNEY FOR APPELLANT**

John T. Castele
1310 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Marc D. Bullard
        Erica Barnhill
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1}  Appellant, Tony Collins, brings this consolidated appeal of his drug trafficking convictions in two criminal cases.   After a thorough review of the record and law, we affirm in part and reverse and remand in part.

{¶ 2}  Appellant was indicted in CR-529965 on October 20, 2009 on charges of drug trafficking, drug possession, and possession of criminal tools. The day before trial was to begin, he was arrested for substantially the same crimes.   Appellant was indicted in CR-533453 on February 2, 2010 on charges of drug trafficking and possession with school yard specifications. The cases were consolidated for a bench trial, which began on June 15, 2010.

**{¶ 3}** The state presented the testimony of Cleveland police detectives and a United States Postal Service ("USPS") investigator at trial. Detective Neil Hutchinson of the Package Interdiction Team ("PIT"), a division of the Cleveland Police Narcotics Unit, testified that on October 9, 2009, he observed a suspicious package at a Federal Express sorting facility in Cleveland, Ohio. Upon further investigation and after a trained dog indicated the package contained illicit drugs, a search warrant was obtained and the package was opened. Det. Hutchinson discovered approximately 6,573 grams of a substance that field-tested positive for marijuana packaged in a round Tupperware-style container. He sought and was granted an anticipatory warrant for the address where the package was destined and arranged a controlled delivery posing as a Federal Express employee. Det. Hutchinson delivered the package to its destination, where it was illegibly signed for and accepted by James Collins, appellant's brother. Det. Hutchinson then drove away.

**{¶ 4}** Detective Thomas Klamert, a member of the Cleveland Police Narcotics Unit, was working surveillance when the package was delivered. Det. Klamert testified that after Det. Hutchinson drove away, he observed James make a call on his cell phone. A short time later, appellant arrived at the location. Det. Klamert testified that appellant retrieved the package from James and then walked a few houses down. Appellant then stepped

onto the porch of a vacant home and was seen "monkeying with the box." It was later determined that he removed the shipping label from the box and tossed it onto the front lawn. Detectives moved in and arrested appellant and his brother.

{¶ 5} On January 14, 2010, postal inspector Martin Cernelich of the USPS was alerted to another suspicious package in a Cleveland mail sorting facility. He conducted an investigation that resulted in a federal warrant to open the package. He discovered a large cellophane-wrapped bundle of marijuana with a total weight, including the cellophane, of 12 pounds and 7.55 ounces. Inspector Cernelich testified that the contents field-tested positive for marijuana. The weight of the marijuana was later determined to be 4,567 grams. Inspector Cernelich then collaborated with PIT detectives to arrange a controlled delivery to the destination address. On January 20, 2010, Inspector Cernelich arrived at the address wearing a USPS uniform and attempted delivery of the package. He was met by an older gentleman, Trent Collins, who informed him that the package recipient did not live at that address. Inspector Cernelich left information with the man so the intended recipient could retrieve the package. He later learned that several calls had been received at the USPS branch office responsible for delivery of the package, and someone had attempted to pick it up.

**{¶ 6}** Inspector Cernelich then arranged to attempt delivery a second time and, on January 27, 2010, he drove to the destination address posing as a mail carrier. This time he was met by appellant and was informed that the named recipient did indeed live at the address. Appellant signed for the package using a false name, John Jones. Inspector Cernelich gave him the package and then left.

**{¶ 7}** PIT detective Joseph Bovenzi, who had been surveilling the delivery, testified that he observed appellant receive the package from Inspector Cernelich. He testified that appellant initially went inside the home, but emerged approximately 30 seconds later and placed the package on the porch a few feet from the doorway. Officers then decided to execute the search warrant they had obtained. They arrested appellant and seized the package. Appellant was heard saying that "[y]ou don't have sh*t on me. I didn't even sign my real name."

**{¶ 8}** The trial court found appellant guilty of one count of drug trafficking, drug possession, and possession of criminal tools in CR-529965; and one count of drug trafficking and drug possession with school yard specification in CR-533453. The trial court determined that the counts of drug trafficking and drug possession were allied offenses, and the state elected to proceed with sentencing on the two trafficking charges. In CR-529965, appellant was sentenced to two years of incarceration for drug

trafficking, to be served concurrently with six months for possession of criminal tools, and forfeiture of a cell phone. In CR-533453, appellant was sentenced to a term of imprisonment of four years to be served consecutively to the term in CR-529965, for a total prison sentence of six years. Appellant was also informed of a mandatory three-year term of postrelease control. He then timely filed the instant appeal, citing three assignments of error.[1]

## Law and Analysis

### Sufficiency

{¶ 9} Appellant first claims that the state produced insufficient evidence to convict him of drug trafficking.

{¶ 10} "In a criminal case, the state must prove that the accused engaged in 'a voluntary act, or an omission to perform an act or duty that the person is capable of performing,' with the 'requisite degree of culpability' for each element of the alleged offense in order to obtain a conviction. R.C. 2901.21(A). 'The state has the burden of establishing all material elements of a crime by proof beyond a reasonable doubt.' *State v. Manley* (1994), 71 Ohio St.3d 342, 346, 643 N.E.2d 1107, citing *Mullaney v. Wilbur* (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508; *State v. Adams* (1980), 62 Ohio St.2d 151, 153, 16 O.O.3d 169, 404 N.E.2d 144. '[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt

---

[1] Appellant's assignments of error are contained in the appendix.

of *every fact necessary* to constitute the crime with which [the accused] is charged.' (Emphasis added.) *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368." *State v. Nucklos*, 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, ¶6.

{¶ 11} Appellant was convicted of two counts of drug trafficking. Ohio's drug-trafficking statute, R.C. 2925.03, provides, "(A) [n]o person shall knowingly do any of the following:

{¶ 12} "(1) * * * ;

{¶ 13} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

{¶ 14} Appellant was also found guilty of drug possession, defined in R.C. 2925.11 as the knowing possession, obtainment, or use of a controlled substance.

{¶ 15} "A person acts 'knowingly' when 'he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.' R.C. 2901.22(B). Knowledge is generally not susceptible to direct proof, but must be determined through inferences drawn from the surrounding facts and circumstances." *State v. Saddler* (Oct. 21,

1999), Cuyahoga App. No. 74218, 5, citing *State v. Green* (Apr. 20, 1988), Hamilton App. No. C-860791.

**{¶ 16}** Appellant claims the state failed to adduce sufficient evidence that he trafficked or possessed any drugs or that he had knowledge of the marijuana found in the packages he received. Appellant points to *State v. Bettis*, Hamilton App. No. C-060202, 2007-Ohio-1724, for support, but this case is distinguishable. In that case, the state failed to show that Bettis ever gained dominion or control over the package. During a controlled delivery, the police officer never gave Bettis the package. The officer maintained possession the entire time, and Bettis was arrested without having received it. The *Bettis* court reversed the conviction for drug possession because the state could not show possession, constructive or otherwise. Here, appellant received both packages and actually possessed them. He even went so far as to remove the shipping label from one of the packages. Although appellant did not open the boxes, he did maintain possession of them.

**{¶ 17}** In *Saddler*, this court faced a similar situation where authorities intercepted a package containing drugs and substituted some of the contents for a benign substance. This court found that the state failed to show that Saddler constructively possessed the contraband before the state removed a portion of the drugs, and therefore, reversed Saddler's conviction as to the full amount of the drugs originally shipped. His convictions were sustained only

to the amount Saddler actually possessed upon receipt of the package. This court affirmed Saddler's convictions for drug trafficking and drug possession in spite of the fact that no evidence was offered that Saddler inquired about the whereabouts of the package or attempted to direct its delivery, and the package was not addressed to him.

{¶ 18} Appellant argues that he did not know there was marijuana inside the packages, but that is contradicted by his actions and the circumstances. The packages were sent to different addresses using false names for the senders and the recipients. Regarding the second package, appellant signed using a false name and claimed that the named recipient resided at the address when Inspector Cernelich, during the previous attempted delivery, had been informed by the homeowner that no one by that name lived there. "'"It is today universally conceded that the fact of an accused's flight, escape from custody, resistence to arrest, concealment, *assumption of a false name*, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."'" (Emphasis added.) *United States v. Griffin* (C.A.6, 1999), 172 F.3d 874, quoting *United States v. Serio* (C.A.6, 1971), 440 F.2d 827, 832, quoting *Marcoux v. United States* (C.A.9, 1968), 405 F.2d 719, 721.

{¶ 19} To establish that appellant was guilty of drug trafficking, two police officers testified that, based on their extensive training and experience,

the quantity of marijuana involved was indicative of trafficking. "We have held in several cases that police officers may testify to the nature and amount of drugs and its significance in drug trafficking." *State v. Young*, Cuyahoga App. No. 92744, 2010-Ohio-3402, ¶19, citing *State v. Fellows* (May 22, 1997), Cuyahoga App. No. 70900, citing *State v. Crenshaw* (June 4, 1992), Cuyahoga App. No. 60671; *State v. Wilson* (Oct. 3, 1996), Cuyahoga App. No. 69751.

**{¶ 20}** Also, Det. Hutchinson testified that the first package was sent using a false name, address, and phone number for the sender, and the phone number was the same for the sender and recipient. The named recipient did not reside at the destination address, and the package was heavily taped and sent overnight at a cost of $101. He testified that this was often indicative of a package that contained drugs. Inspector Cernelich testified that the name, phone number, and address of the sender listed on the second package were fictitious. He also spoke to the postal carrier who serviced the block of the listed address of the sender and was informed that no one by the listed name lived on that block, and Cernelich confirmed with various databases that the address did not exist. This evidence provides a strong indication that appellant served as the last leg in the transportation of marijuana from California to Cleveland for distribution and sale. This is sufficient evidence that appellant violated R.C. 2925.03(A)(2).

{¶ 21} This court has held that "[w]ith respect to the charge of possession of drugs for sale [R.C. 2925.03], an inference may be drawn from the circumstances surrounding the defendant at the time of his arrest and the quantity and character of the narcotics seized at the time." *State v. Conner*, Cuyahoga App. No. 84073, 2005-Ohio-1971, ¶57, citing *State v. Jones* (Dec. 26, 1973), Franklin App. No. 73AP-338. This court went on to hold that "approximately fifty pounds of marijuana was discovered in the two bags. A prudent person could conclude that those narcotics were in his possession for the purpose of sale and not for personal consumption." Id.

{¶ 22} During oral arguments, appellant's counsel implored this court to review the very recent case, *State v. Blackshear*, Cuyahoga App. No. 95424, 2011-Ohio-1806. However, that case is distinguishable from the present one for a number of reasons. Blackshear testified that Det. Bovenzi covered the shipping label with a clipboard where Blackshear signed his real name and never inquired if Blackshear was the intended recipient of the package. His father also regularly received packages at home, leading this court to the conclusion that Blackshear possessed a reasonable assumption that the package was for his father. Blackshear's father also testified that as he left for work, he saw the package his son had left next to the front door and instructed his son to leave it for him to take care of after he returned. The

police executed a warrant before the father returned home, and they found the package still unopened next to the door.

{¶ 23} This court decided that a "deliberate ignorance" or "willful blindness" jury instruction[2] was improperly given because the state had offered insufficient evidence that Blackshear deliberately turned a blind eye to the likely contents of the package. This court held that the detective delivering the package "did not testify that he said anything to defendant that would or should have aroused defendant's suspicions." Id. at ¶42.

{¶ 24} Here, appellant twice received packages addressed to others that contained large quantities of marijuana. There was no "deliberate ignorance" or "willful blindness" instruction given, and appellant signed a false name when he claimed the second package.[3]

{¶ 25} Appellant's convictions for drug trafficking and drug possession are supported by sufficient evidence because, viewing the evidence in a light most favorable to the state, appellant knew the contents of the packages, participated in its transport to Cleveland for sale or distribution, and the

---

[2] See *State v. Smith* (June 15, 1995), Cuyahoga App. No. 67524.

[3] Such an instruction may have been proper in this case because Inspector Cernelich testified that he asked appellant if the named recipient of the second package lived at the address and appellant responded that she did, even though Cernelich had been told by the homeowner that she did not. This should have been sufficient to raise appellant's suspicion.

testimony of various police officers indicated that the quantity involved — some 25 pounds of marijuana — was indicative of drug trafficking.

{¶ 26} Appellant next argues that the state failed to adduce sufficient evidence to sustain the school yard specification. R.C. 2925.03(C)(3)(d) indicates that if the offense occurs within the vicinity of a school, it is elevated to a second degree felony. R.C. 2925.01(P) defines "vicinity of a school" as "on school premises, in a school building, or within one thousand feet of the boundaries of any school premises[.]"

{¶ 27} The state offered the testimony of Det. Hutchinson, along with a map prepared by the Cuyahoga County Engineer's Office showing the location of the controlled delivery and the distance between it and South High School. Det. Hutchinson testified that South High School "*is* a Cleveland public school," and is "within 1,000 feet of the location" of the controlled delivery. (Emphasis added.)

{¶ 28} The state rests their entire argument on the present-tense meaning of "is." In *State v. Johnson*, Cuyahoga App. No. 82804, 2004-Ohio-745, ¶30, this court affirmed a school yard specification conviction where a police officer "testified that the transaction occurred within the vicinity of an elementary school [Fullerton Elementary School], and a map depicting the elementary school as within a 1,000 foot radius[.]" The Third District also addressed a similar issue and determined that reference to the

school by name was sufficient evidence to sustain the specification. *State v. McDuffey*, Seneca App. No. 13-03-41, 2003-Ohio-6985, ¶8. Finally, the Ohio Supreme Court upheld a similar conviction when three witnesses testified that the transaction took place within 1,000 feet of a school without specifically addressing whether the school met the definition under R.C. 2925.01®), and merely referred to the school by its name. *State v. Manley*, 71 Ohio St.3d 342, 348, 1994-Ohio-440, 643 N.E.2d 1107.

{¶ 29} However, this court in *State v. Darling*, Cuyahoga App. No. 92120, 2009-Ohio-4198, required that reference by name was not sufficient when no evidence was adduced showing the school was open and operating. This court agreed with the Sixth District that "'[t]he introduction of evidence that a "school" as defined by R.C. 2925.01 actually exists in proximity to the location is * * * not an unduly burdensome requirement.'" Id. at ¶20, quoting *State v. Boyd*, Ottawa App. No. OT-06-034, 2008-Ohio-1229. Here, there is no evidence that South High School was open and operating apart from the present-tense form of the verb "is" used by the officer while testifying about the location of the school. Under our most recent precedent, this was insufficient to sustain the school yard specification in this case. Therefore, this specification must be vacated.

{¶ 30} Appellant next argues that the state failed to support his conviction for possession of criminal tools with sufficient evidence. R.C.

2923.24 states that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 31} The state argues that appellant used his cell phone in obtaining the first package from his brother James. Det. Klamert testified that a short time after receiving the package, James made a call on his cell phone, and a short time after that, appellant arrived. Det. Klamert testified that he observed both men talking on their cell phones. However, the state did not investigate the cell phone records to determine if appellant was talking to James prior to receiving the package from him. The state did not even examine the phones to determine what phone number was last dialed or from what number the last incoming call was received.

{¶ 32} The entire testimony regarding the possession of criminal tools charge rests solely on the officers' observations of both men talking on cell phones prior to James giving the package to appellant. The state has not presented sufficient evidence with which the jury could make a reasonable inference that appellant used his cell phone with a criminal purpose. Recently, in *State v. Brooks*, Cuyahoga App. No. 94978, 2011-Ohio-1679, ¶23, this court reaffirmed our holding in *State v. Byers*, Cuyahoga App. No. 94922, 2011-Ohio-342, ¶9, that "[t]he ubiquitousness of cell phones is such that the mere possession of a cell phone is not ipso facto proof that it was used in drug

trafficking." The *Brooks* court reversed a conviction of possession of criminal tools where insufficient evidence existed in the record to demonstrate that the appellant actually used the cell phone in furtherance of drug trafficking. *Brooks* at ¶23.

{¶ 33} All we have in the present case is an inference based on an inference. First, that James called appellant, and, secondly, that the call aided appellant in the trafficking of marijuana. These multiple inferences we are left with are inconsistent with the state's burden of proof. Therefore, appellant's first assignment of error is sustained only as to his conviction for possession of criminal tools, the resultant forfeiture specifications, and the school yard specification. Otherwise, appellant's first assignment of error is overruled.

**Manifest Weight**

{¶ 34} Appellant also claims that his convictions were against the manifest weight of the evidence.

{¶ 35} "The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the

evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶25.

{¶ 36} Appellant relies on the fact that the packages were unopened and argues that he had no idea that a substantial quantity of marijuana was contained in the two packages he received in the mail. His knowledge is demonstrated in his actions, as explained above. Simply because he did not open the packages — a tactic used by drug traffickers to attempt to avoid liability[4] — does not establish that his convictions for drug trafficking and drug possession are against the manifest weight of the evidence. The

---

[4] *Saddler* at 3 ("[D]rug traffickers usually leave a package unopened for some time after delivery so if the police come in, they can deny any knowledge about the contents of the package.").

evidence presented by the state weighs in favor of conviction in this case. Accordingly, appellant's second assignment of error is overruled.

## Ineffective Assistance of Counsel

**{¶ 37}** Appellant finally claims that he was denied effective assistance of counsel. He specifically argues that his trial counsel was constitutionally deficient when stipulating to the accuracy of the laboratory report stating the amount and type of drugs involved and for failing to object to testimony of the detectives regarding the report, in violation of his right to confront witnesses against him as stated in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, and *Melendez-Diaz v. Massachusetts* (2009), 557 U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314.

**{¶ 38}** In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.

**{¶ 39}** In reviewing a claim of ineffective assistance of counsel, it *must* be presumed that a properly licensed attorney executes his legal duty in an

ethical and competent manner.  *State v. Smith* (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128; *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164.

{¶ 40} The Ohio Supreme Court held in *State v. Bradley* (1989), 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373, that, "'[w]hen considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.'  *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.  This standard is essentially the same as the one enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668 * * *.

{¶ 41} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction.  'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. *United States v. Morrison,* 449 U.S. 361, 364-365 [101 S.Ct. 665, 667-68, 66 L.Ed.2d 564] (1981).'  *Strickland,* supra, 466 U.S. at 691, 104 S.Ct. at

2066. To warrant reversal, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Strickland, supra,* at 694, 104 S.Ct. At 2068. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice.

{¶ 42} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 142-143.

{¶ 43} In *Melendez-Diaz*, the Supreme Court ruled that the presentation of a lab report without the testimony of the technician conducting the analysis violated a defendant's Sixth Amendment right to confrontation because the report was testimonial under *Crawford*. Here, appellant has failed to demonstrate a reasonable probability that the outcome of his trial would have been different. The contents of both packages field tested positive for marijuana. Further, Inspector Cernelich weighed the contents of the second package in the field and determined its weight, including

cellophane wrapping, to be 12 pounds and 7.55 ounces. This is consistent with a weight of 4,567 grams[5] as stated in the report.

**{¶ 44}** The Ohio Supreme Court has found that Ohio's "notice and demand" statutes[6] adequately protect this right to confrontation and that the right can be waived. *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270. The waiver of such a right can be a tactic of trial. *State v. Jackson*, Ashtabula App. No. 2007-A-0079, 2010-Ohio-820, ¶30-32. Therefore, because there is no evidence that this matter of trial strategy would have changed the outcome of appellant's trial, this assignment of error is overruled.

**{¶ 45}** Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

---

[5] Roughly ten pounds.

[6] R.C. 2925.51(C) is applicable in this case and states, "[t]he report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report."

convictions having been affirmed in part, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, J., CONCURS AND DISSENTS IN PART (WITH SEPARATE OPINION);

SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

LARRY A. JONES, J., CONCURRING AND DISSENTING IN PART:

**{¶ 46}** Respectfully, I dissent as to the majority's finding of sufficient evidence to support the drug trafficking convictions.

**{¶ 47}** Drug trafficking is prohibited by R.C. 2925.03(A)(2), which provides in relevant part that:

> "No person shall knowingly * * *[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

**{¶ 48}** Thus,   to convict Collins for drug trafficking, the state needed to prove that he knowingly did one of the following:   (1) prepared the marijuana for shipment; (2) shipped, transported, or delivered the marijuana; (3)

prepared the marijuana for distribution; or (4) distributed the marijuana. *State v. Hatcher* (July 31, 1997), Cuyahoga App. No. 70857. There was no evidence that Collins did any of the above.

{¶ 49} In its brief, the state contends that Collins "prepared the marijuana for distribution by accepting delivery of the packages." The state cites four cases in support of its position: *State v. Patterson* (1982), 69 Ohio St.2d 445, 432 N.E.2d 802; *State v. Ballard* (May 31, 1990), Cuyahoga App. No. 56676; *State v. Saddler* (Oct. 21, 1999), Cuyahoga App. No. 74218; and *State v. Anderson* (Nov. 27, 1996), Cuyahoga App. No. 69620.

{¶ 50} *Saddler* involved a drug possession, not trafficking, conviction. In *Ballard*, the defendant made a sale of drugs, and in *Patterson* the defendant made an offer to sell, both cases unlike here. (See R.C. 2925.03(A)(1) providing that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance").

{¶ 51} *Anderson* is the only case cited by the state that supports its position, and I respectfully disagree with its holding that, because the defendant possessed a "significant" amount of cocaine, "[a] reasonable conclusion * * * is that [he] intended not to personally consume the cocaine, but knowingly prepared it for shipment or distribution."

{¶ 52} I disagree with the state's contention that "by accepting delivery of the package, [Collins] took the first step (obtaining the wholesale

merchandise) in preparing it for distribution." As this court stated in *State v. Powell* (1993), 87 Ohio App.3d 157, 621 N.E.2d 1328:

> "* * * the offense of drug trafficking defined by R.C. 2925.03(A)(2) requires proof of more than mere 'possession' of a controlled substance. Rather, drug trafficking under this provision requires demonstrating some form of the proscribed trafficking conduct incident to a drug sale." Id. at 170.

**{¶ 53}** Acceptance of the packages only proved possession. No evidence was presented that Collins engaged in "some form of the proscribed trafficking conduct incident to a drug sale." Id. Thus, I would vacate the drug trafficking convictions. I concur with the remainder of the majority opinion.

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

**{¶ 54}** I respectfully concur in judgment only with the holding of the majority on the drug trafficking conviction. I concur fully with the remainder of the majority opinion. I am constrained to concur in judgment only on the drug trafficking count because of prior precedent in this district on the specific subject of what constitutes drug trafficking under R.C. 2925.03(A)(2) as outlined in *State v. Conner,* Cuyahoga App. No. 84073, 2005-Ohio-1971.

**{¶ 55}** In *Conner*, we held that the "quantity and character of the narcotics seized" could form the basis of a conviction under R.C.

2925.03(A)(2), independent of evidence related to the actual elements of the statute. Here, the majority attempts to distance itself from *Conner* by relating the act of receiving drugs to the chain of distribution, and thus making it part of the scheme of a drug shipment covered under R.C. 2925.03(A)(2). Nevertheless, while I agree we must apply the holding in *Conner*, and it may indeed be possible in some circumstances to circumstantially prove the elements of drug trafficking under R.C. 2925.03(A)(2), I feel this case was decided on inferences and not on actual facts supporting the elements of the drug trafficking statute.

{¶ 56} In my view, this case raises concerns about the method of proof being offered by the Cuyahoga County Prosecutor's Office and whether the evidence in so-called "preparation for shipment" cases being considered by trial courts in this district is too remote. Further, the facts in this case, and similar cases, raise questions about the viability of our earlier decision in *Conner*. Nevertheless, because *Conner* is controlling in this district, I would reluctantly affirm the conviction and sentence. I would recommend the court either en banc this issue or restate the law for clarity on what constitutes evidence of "preparation for shipment" in drug trafficking convictions. Further, *Conner* may be in conflict with the holding of earlier cases on this issue in *State v. Thomas* (Mar. 15, 1979), Cuyahoga App. No. 38315, and *State v. Jordan* (1992), 73 Ohio App.3d 524, 597 N.E.2d 1165. Most cases that

support the inference of trafficking based on possession have specific facts related to the packaging or facts relating to the method of trafficking. See *State v. Fellows* (May 22, 1997), Cuyahoga App. No. 70900; *State v. Crenshaw* (June 4, 1992), Cuyahoga App. No. 60671; and *State v. Wilson* (Oct. 3, 1996), Cuyahoga App. No. 69751.

{¶ 57} The statute at issue has specific elements. R.C. 2925.03 defines drug trafficking as follows:

{¶ 58} "(A) No person shall knowingly do any of the following:

{¶ 59} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

{¶ 60} The "preparation for shipment" statute requires some evidence that the offender actually prepares a drug for shipment, or ships a drug, or transports a drug, or delivers a drug, or prepares for distribution a drug, or actually distributes a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

{¶ 61} What has evolved in this district is a pattern where an offender, by receiving a quantity of drugs that suggests trafficking, is automatically presumed to have committed a "preparation for shipment" offense under

R.C. 2925.03(A)(2). Often, no direct evidence of conduct by the offender is offered as to the elements listed above. The inference is because an offender receives a quantity of drugs, that offender is inferred to have violated the elements of R.C. 2925.03(A)(2).

{¶ 62} Normally, convictions are based on specific facts that support or establish the elements of a crime charged. While it is certainly acceptable to infer certain facts or circumstances from the evidence at hand, inferences that establish criminal elements based on other inferences not established in fact thwart how criminal liability should be established in our system of justice.

{¶ 63} An analogous scenario to this situation would be where a person is angry at a neighbor, then makes a verbal threat to that neighbor, and stalks the neighbor outside his home. Given these facts, we might rationally assume the person may attack the neighbor. But that possibility or probability does not satisfy the elements involved for an assault or felonious assault conviction. That person might be charged and found guilty of a variety of other offenses, but unless the authorities can establish by some direct evidence that the person knowingly caused or attempted to cause physical harm, or serious physical harm, or physical harm by means of a deadly weapon, it is unlikely the person can ever be convicted of assault or felonious assault.

{¶ 64} Here, there is overwhelming evidence that Collins possessed a quantity of marijuana that subjected him to an enhanced penalty based on that quantity. Further, while we can rationally assume that Collins did not receive this quantity of marijuana simply to sit in his living room and smoke it all by himself, the act of "receiving" is not one of the enumerated elements under R.C. 2925.03(A)(2). Establishing that the person committed a crime is not possible solely using inferences from assumptions about conduct without factual evidence supporting the actual elements of crime charged.

{¶ 65} The precedent for the conviction on drug trafficking has its origin in our decision in *Conner*. The analysis in *Conner* primarily dealt with peremptory challenges involving African-American jurors in a drug case under *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. It also addressed reasonable suspicion issues related to the stop and subsequent search of bags possessed by Conner at an airport. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; *United States v. Rickus* (C.A.3, 1984), 737 F.2d 360, 365; *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859; *State v. Freeman* (1980), 64 Ohio St.2d 291, 295, 414 N.E.2d 1044; and *Adams v. Williams* (1972), 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612. Also addressed was the admissibility of evidence pursuant to Evid.R. 404(B). *State v. Broom (*1988), 40 Ohio St.3d 277, 281, 533 N.E.2d 682; *State v. Curry* (1975), 43 Ohio St.2d 66, 70, 330 N.E.2d 720.

{¶ 66} Crowded into the well-reasoned and exhaustive analysis of the above issues was a reference to a challenge of the drug trafficking conviction under the "preparation for shipment" language of the statute under R.C. 2925.03(A)(2). The court in *Conner* noted:

{¶ 67} "With respect to the charge of possession of drugs for sale, an inference may be drawn from the circumstances surrounding the defendant at the time of his arrest and the quantity and character of the narcotics seized at the time. In the instant case, approximately fifty pounds of marijuana was discovered in the two bags. A prudent person could conclude that those narcotics were in his possession for the purpose of sale and not for personal consumption. Therefore, the jury's finding Conner guilty of possession of drugs and possession of drugs for sale was proper."

{¶ 68} Had the legislature included the phrases "possession of an amount indicating sale or resale" or "receiving an amount indicating sale or resale," the task of meeting the elements of R.C. 2925.03(A)(2) would be simple.

{¶ 69} The statute as written, however, indicates prospective conduct that is particularized and not based on common assumptions. A plain reading indicates that it requires an offender to take some action in furtherance of the goal of accomplishing trafficking by doing one or more of

the proscribed acts under the statute. Receipt of drugs alone is not one of the enumerated methods of violating the "preparation for shipment" statute.

{¶ 70} Unless police can lay out the conspiracy to distribute drugs, including details on the origin of the shipment, method of shipment, and parties involved in the shipment (real or otherwise), in a manner designed to prove the act of receipt is part of an overall drug conspiracy, the elements that an offender prepares a drug for shipment, or ships a drug, or transports a drug, or delivers a drug, or prepares for distribution a drug, or actually distributes a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person, are not met by evidence of receipt alone.

{¶ 71} Here, there is no question evidence was offered indicating that this delivery was arguably part of the chain of distribution of some unknown conspiracy, but the verdict and the finding of the trial court supporting that conviction was made based solely on the quantity of drugs involved in the package received.

{¶ 72} While I concur with the judgment of the majority because of *Conner*, I have reservations about convictions based on inferences.

APPENDIX

Appellant's Assignments of Error:

I.   "The state produced insufficient evidence to support the defendant's convictions."

II.   "The defendant's convictions were against the manifest weight of the evidence."

III.   "The defendant was denied effective assistance of counsel."