[Cite as *State v. Williams*, 2011-Ohio-4126.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
### No. 96244

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LARRY M. WILLIAMS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-517939

**BEFORE:** Stewart, P.J., Celebrezze, J., and Sweeney, J.

RELEASED AND JOURNALIZED:   August 18, 2011

ATTORNEY FOR APPELLANT

James R. Willis
323 W. Lakeside Avenue
420 Lakeside Place
Cleveland, OH 44113-1009


ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor

BY:   William Leland
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶ 1} Defendant-appellant, Larry Williams, appeals from his convictions for  possession of drugs, drug trafficking with a schoolyard specification, tampering with evidence, and possession of criminal tools. Williams complains that:  (1) his rights guaranteed by the federal and state constitutions were violated when the trial court denied his *Batson* objections, (2) the court erred when denying his motion to suppress, (3) insufficient

evidence was offered by the state to support the schoolyard specification, and (4) the evidence was insufficient as a matter of law to support his convictions.

{¶ 2} Vice detectives from the Cleveland Police Department's Second District received a tip from a confidential reliable informant ("CRI") that "Jose" was engaged in drug trafficking, and then organized and monitored a telephone call from the CRI to "Jose" to arrange a transaction for the sale of crack cocaine. The CRI and "Jose" agreed upon a rendezvous point. The officers ensured that the CRI was free of contraband, provided "buy" money, and staked out the prearranged meeting point.

{¶ 3} A short time later, when Williams and co-defendant John Jones arrived at the agreed upon location by automobile, the CRI approached and subsequently entered the back seat of the vehicle. The vehicle, while under surveillance, circled the block. The CRI, after exiting the vehicle, used a prearranged signal to communicate to the detectives that the drug purchase had taken place. The CRI then provided the detectives the illegal narcotics and additionally informed them that front seat passenger "Jose" still possessed a sizable quantity of crack cocaine.

{¶ 4} When Williams and Jones drove away from the area where the transaction occurred, the detectives followed. Police takedown units halted the vehicle several blocks away. Williams began flinging crack cocaine from the front passenger car window onto the street and over the edge of a bridge.

Williams and Jones were taken into custody, and the ensuing search revealed "buy" money in their possession along with several cellular telephones. Additionally, numerous crack rocks were recovered adjacent to the vehicle and below the bridge, having a probable street value of around $2,000.

{¶ 5} Williams first argues that the trial court deserted its responsibility as gatekeeper by not requiring the prosecutor to disprove the presumption of racial discrimination when he repetitively used peremptory strikes against black jurors, and this in turn resulted in a deprivation of his federal and state constitutional rights. He contends that the prosecutor offered no genuine race-neutral reasons for striking African-American jurors.

{¶ 6} In order to establish purposeful discrimination in the exercise of peremptory challenges, a defendant must show that he is a member of a cognizable racial category, that the prosecutor has utilized peremptory challenges during jury selection to eliminate members of defendant's race, and that the facts and other related circumstances raise a presumption of resolute prejudice. *Batson v. Kentucky* (1986), 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69. The defendant is permitted to rely on the belief that peremptory challenges are tantamount to a jury selection procedure that allows "those to discriminate who are of a mind to discriminate." *Avery v. Georgia* (1953), 345 U.S. 559, 562, 73 S.Ct. 891, 97 L.Ed. 1244.

**{¶ 7}** The trial court should take into account all relevant circumstances when deciding whether defendant has accomplished the necessary showing; if a prima facie showing has been made, the burden then shifts to the state to proffer an unbiased justification for challenging the affected jurors. *Batson,* 476 U.S. at 96-97. "[T]o rebut a prima facie case, the proponent of a strike must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Puckett v. Elam* (1995), 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834, citing *Batson*, 476 U.S. at 98. The state cannot justify the exclusion of jurors on the supposition that they will be biased because they share the race of defendant, or "rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirming his good faith in making individual selections.'" *Batson*, 476 U.S. at 98, citing *Norris v. Alabama* (1935), 294 U.S. 587, 598, 55 S.Ct. 579, 79 L.Ed. 1074. Nevertheless, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Puckett,* 514 U.S. at 768, citing *Hernandez v. New York* (1991), 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395. "A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶61.

{¶ 8} Here, Williams is a 26-year-old African-American male. The state issued seven peremptory challenges, and five of those challenges excluded African-American jurors from the panel. The state also excluded two Caucasians, and when jury selection was ultimately accomplished, five of the 12 jurors were African-American. Williams has satisfied the first two prongs of the above-noted test. The burden then shifted to the state to justify its peremptory strikes of the African-American jurors.

{¶ 9} The state's articulated reasons for excusing the five African-American jurors consisted of: one juror did not seem interested in the proceeding; a second juror did not take the proceeding seriously; another juror was employed at an establishment inundated by a high rate of crime; a fourth juror failed to remember that a family member was a former assistant county prosecutor; and lastly, the final juror was unemployed and difficult to understand.

{¶ 10} In this instance, the state's pronounced rationale in defense of its peremptory strikes are expressly unambiguous, facially race-neutral, void of inherent discriminatory intent, and at the very least, plausible. In fact, each of the above-noted reasons, if accurate, had an adverse effect on the ability of the prospective candidates to successfully perform as jurors. As such, the state has met its burden of asserting race neutral reasons.

{¶ 11} Moreover, the trial court engaged in more than a perfunctory inquiry into the state's motivation for exercising its challenges. The record indicates that during a discussion between the court and counsel on the record and out of the hearing of the jury, the court inquired with specificity as to the reasons for the state's exercise of the related strikes. Therefore, the lower court's denial of Williams's *Batson* objections was proper and its finding of no discriminatory intent was not clearly erroneous.

{¶ 12} Williams furthermore asserts that the trial court erred in denying his motion to suppress because no probable cause existed to stop the vehicle in which he was a passenger. He maintains that the evidence proffered by the state to prove that a drug-related sales transaction had occurred consisted only of bare assertions by the police detectives that a "phantom" CRI, protected by privilege, not produced, and unavailable to testify, informed them that a transaction had in fact transpired. Williams also notes that no traffic laws were violated, so a traffic stop could not serve as justification for the ensuing stop. As a result, he contends that the warrantless search, seizure, and arrest were unlawful and that all subsequent evidence and statements obtained were necessarily tainted fruit from the poisonous tree.

{¶ 13} Warrantless searches and seizures are forbidden by the Fourth and Fourteenth Amendments to the U.S. Constitution and, as such, are unreasonable unless an exception is applicable. *Katz v. United States* (1967),

389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. One departure, the automobile exception, allows police to carry out a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances compel a search or seizure. *Chambers v. Maroney* (1970), 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The mobility of automobiles frequently results in the creation of exigent circumstances, and is the customary rationalization for this exception to the Fourth Amendment's warrant obligation. *California v. Carney* (1985), 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406.

{¶ 14} The Fourth Amendment permits a police officer to stop and detain an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." *Terry v. Ohio* (1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889. In determining whether reasonable suspicion is present, courts must scrutinize the "'totality of the circumstances' of each case to determine whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu* (2002), 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 15} The analysis to determine if there is probable cause to substantiate an arrest is "whether at that moment the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142.

{¶ 16} In this case, the facts and circumstances supplying the requisite probable cause are considerable. The vice detectives orchestrated an investigation concerning the sale of illegal drugs, the target of which was Williams. The detectives then prearranged and monitored a telephone call from the CRI to Williams in order to coordinate the time, location, and quantity for the sale of crack cocaine. The officers observed Williams arrive at the arranged time and as a passenger in a blue Cadillac that was never out of the sight of the officers throughout the entire incident. The CRI entered the blue Cadillac and upon exiting conveyed to the authorities, via a preestablished gesture, that the drug buy had in fact taken place. The CRI told the police that Williams was in possession of a large quantity of crack cocaine. Exigent circumstances giving rise to the subsequent actions of police takedown units were created when the blue Cadillac utilized in the suspected drug transaction left the scene.

**{¶ 17}** Williams notes that the trial court employed inaccurate language in denying his motion to suppress by frequently referring to the police takedown as a "traffic stop." Nevertheless, the trial court properly denied the motion to suppress in spite of using the wrong terminology. As a result, Williams's contentions are without merit since "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof." *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172.

**{¶ 18}** Based on these facts, we conclude that the officers presented reasonable and articulable facts to establish that criminal activity, in this instance an illegal drug buy, had taken place. In light of the totality of the circumstances, the facts at bar satisfy the applicable legal standard for probable cause to stop and search the Cadillac. Therefore, Williams's arguments in support of suppressing the evidence are not persuasive.

**{¶ 19}** Williams, in his third assignment of error, contends that the state offered insufficient evidence of his conviction for the school yard specification. He argues that simply passing by a school while in possession of illegal narcotics is inadequate to support the lower court's ruling.

**{¶ 20}** R.C. 2925.03(C)(3)(d) indicates that if a [drug-related] offense occurs within the vicinity of a school, it is elevated to a second degree felony. "R.C. 2925.01(P) defines 'vicinity of a school' as 'on school premises, in a

school building, or within one thousand feet of the boundaries of any school premises[.]'" *State v. Collins*, 8th Dist. No. 95422, 2011-Ohio-2660, ¶26. Several courts have decided that testimony alone, recounting the requisite distance and referencing the associated school by name, is sufficient evidence to sustain a school yard specification. *State v. McDuffey*, 3d Dist. No. 13-03-41, 2003-Ohio-6985; *State v. Manley*, 71 Ohio St.3d 342, 1994-Ohio-440, 643 N.E.2d 1107.

{¶ 21} Here, trial testimony established the locations where Williams met the CRI and thereafter traveled while conducting the drug deal as being within 1,000 feet of the boundary of St. Ignatius High School. Therefore, Williams's third assignment of error is overruled.

{¶ 22} Williams, in his final assignment of error, insists that the trial court erred when it denied his Crim.R. 29 motion for acquittal because the evidence offered by the state was insufficient as a matter of law.

{¶ 23} Crim.R. 29 provides, in pertinent part: "(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." When a defendant contests the legal sufficiency of the state's evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Herring,* 94 Ohio St.3d 246, 252, 2002-Ohio-796, 762 N.E.2d 940, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{¶ 24}** Williams continually points to discrepancies between the police reports and trial testimony, and disputes that the officers actually saw crack cocaine being thrown from the blue Cadillac due to distance and lighting deficiencies. He additionally mentions that there were no recovered containers used for packaging and distributing crack cocaine. The state conversely contends the evidence relied upon for conviction was straight forward and overwhelming.

**{¶ 25}** R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Drug trafficking encompasses activities including preparation of illegal drugs for shipment or distribution as well as shipping, transporting, or delivering a controlled substance. R.C. 2925.03(A)(2). The evidence in the record indicates that the quantity of crack cocaine recovered from in and around the car where Williams was a passenger weighed about 19 grams with a probable street value of $2,000. "Buy" money was found on Williams. Additionally, no crack pipes or similar drug paraphernalia associated with personal drug usage were recovered. Testimony established that this drug activity was

"committed in the vicinity of a school," and therefore, the evidence is sufficient to sustain a conviction pursuant to R.C. 2925.03(C)(2)(b). R.C. 2921.12(A)(1) prohibits persons from "alter[ing], destroy[ing], conceal[ing], or remov[ing] *** any thing with the purpose to impair its *** availability as evidence ***," and trial testimony confirms that Williams attempted to discard crack cocaine by throwing it out of the window of the automobile. Finally, R.C. 2923.24 prohibits the use of any device or instrument for criminal purposes, and Williams violated this statute when he used his cellular telephone to arrange the drug buy with the CRI.

{¶ 26} Viewing the evidence in a light most favorable to the state, as we must, a rational trier of fact could find all the essential elements of Williams's crimes proven beyond a reasonable doubt. Williams's fourth assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
JAMES J. SWEENEY, J., CONCUR