[Cite as *State v. Nix*, 2025-Ohio-2735.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2024-L-092** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ANDREW NIX, JR., | |
| Defendant-Appellant. | Trial Court No. 2022 CR 000661 |

## OPINION AND JUDGMENT ENTRY

Decided: August 4, 2025
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric M. Levy*, The Law Office of Schlachet and Levy, Terminal Tower, Suite 2200, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Andrew Nix, Jr., appeals from the denial of his motion to suppress and convictions for Possession of Cocaine and Trafficking in Cocaine in the Lake County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2} On August 10, 2022, the Lake County Grand Jury indicted Nix for Possession of Cocaine, a felony of the fourth degree, in violation of R.C. 2925.11, and Trafficking in Cocaine, a felony of the fifth degree, in violation of R.C. 2925.03(A)(1). Both counts had forfeiture specifications under R.C. 2941.1417 and R.C. 2981.04.

**Suppression Motion and Hearing**

{¶3}   On October 24, 2024, Nix filed a motion to suppress, arguing that the police lacked probable cause to stop him for a window tint violation and to continue the seizure to search the vehicle.  The court held a suppression hearing on November 8, 2024.  The following pertinent testimony was presented and outlined in the court's suppression entry:

{¶4}   Special Agent 91 from the Lake County Narcotics Agency testified that a controlled drug buy was set up for June 17, 2022, based upon information provided from a confidential informant that he could purchase drugs from Nix.  The informant arranged to purchase $100 of crack cocaine from Nix in a McDonald's parking lot.  Eastlake police officers provided support for the buy and were briefed that they would stop Nix's vehicle after the buy.  Agent 91 parked across from McDonald's and viewed the transaction on a live video stream.  He watched the informant hand Nix $100 through the passenger window and Nix hand the informant a white envelope believed to contain crack cocaine.  After viewing the stream, Agent 91 radioed the support officers that the transaction was complete and the seller was in a beige or tan Toyota.  Agent 91 then met with the informant, who provided an item described as consistent with that viewed in the video.

{¶5}   Detective Cole Eden of the Eastlake Police Department was present near the scene of the drug buy, having been briefed on the plan.  He testified that "once the undercover agents . . . witnessed the transaction of money for narcotics, they put it out over the radio and let us know that the deal had been made."  Within two minutes or less, he saw the vehicle described in a radio transmission.  He conducted a stop and informed the driver the reason for the stop was window tint.  Within about a minute of the stop, a Willoughby K-9 arrived and alerted to the presence of drugs.  Eden indicated that he

Case No. 2024-L-092

planned to conduct the stop regardless of any other traffic violation due to the drug transaction. He testified that officers may sometimes provide the driver with a different reason for the stop to protect the confidential informant's identity.

{¶6} The court issued a judgment entry on November 20, 2024, denying the motion to suppress. It found reasonable suspicion to conduct the stop as well as probable cause to search the vehicle based on the observation of the controlled buy.

**Bench Trial and Sentence**

{¶7} The following pertinent testimony and evidence were presented at a bench trial on November 22, 2024:

{¶8} Special Agent 91 again described the June 17 controlled buy. He elaborated that he picked up the informant at his residence, and, after a pre-buy brief at the Eastlake Police Department, the informant went back inside his residence for approximately ten minutes because this was his usual conduct prior to meeting with Nix. Agent 91 did not remain at the informant's residence while he was inside. After walking to McDonald's, the informant approached the passenger side of the Toyota and exchanged $100 in cash, which included bills with recorded serial numbers, for "the purported quantity of suspected cocaine." Agent 91 confirmed that, when watching the live stream, he could not immediately know it was cocaine. Immediately following the transaction, the confidential informant handed Agent 91 the suspected cocaine, which appeared to be consistent with $100 worth of cocaine. Although Agent 91 searched the informant after picking him up and again following the transaction, he did not search him after he entered his residence immediately preceding the drug buy.

{¶9} Special Agent 91 testified that, when interviewed after his arrest, Nix

Case No. 2024-L-092

indicated that the drugs found in the car did not belong to the driver, his fiancée, although he did not say they belonged to him. In the booking video, Nix stated that he took responsibility for the drugs found in the vehicle and that they were on his side.

{¶10} Detective Kristijan Korun of the Eastlake Police Department testified that the informant was "willing to work off [a] charge" for prior criminal activity by acting as an informant. Following the drug deal, Korun heard a radio transmission that the transaction was complete and Nix was in a tan or pewter Toyota. After receiving a description of the car's direction of travel, multiple officers began following it. He believed about three to five minutes passed from the time the transaction occurred until officers conducted the stop. Sergeant Michael Frank assisted with the stop and conducted a search of the vehicle after being advised by the K-9 handler that there had been a positive alert. Police recovered a bag of crack cocaine in the passenger's side door.

{¶11} Korun indicated that the bills recorded by the Lake County Narcotics Agency via serial number were recovered from Nix's person after his arrest. Korun testified that when he dialed the phone number associated with Nix from the drug transaction, it rang on a cell phone recovered from Nix after his arrest.

{¶12} William Koubek and Tyler Meader of the Lake County Crime Laboratory testified that the items submitted in this case included .95 grams of cocaine and 6.62 grams of cocaine.

{¶13} Following the State's presentation of evidence, the trial court denied Nix's Crim.R. 29 motion to dismiss. The court found him guilty of the offenses as charged in the indictment and sentenced him to serve concurrent terms of 13 months in prison for Possession of Cocaine and 12 months for Trafficking in Cocaine.

Case No. 2024-L-092

{¶14} Nix timely appeals and raises the following assignments of error:

{¶15} "[1.] The trial court erred when it denied appellant's motion to suppress evidence obtained after an illegal stop, search, and seizure were conducted and the stop was made absent reasonable suspicion and the search absent probable cause."

{¶16} "[2.] The trial court erred and abused its discretion when it failed to re-consider its ruling on appellant's motion to suppress evidence when new evidence was obtained during trial."

{¶17} "[3.] The trial court erred when it convicted appellant in count two against the manifest weight of the evidence."

{¶18} In his first assignment of error, Nix raises multiple issues relating to the denial of his motion to suppress.

{¶19} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

**Reasonable Suspicion to Conduct Stop**

{¶20} First, Nix argues that there was not reasonable suspicion of criminal activity to conduct the stop of his vehicle because the officer did not "observe some substantial evidence of drug/illegal activity between the individuals within the vehicle."

{¶21} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays*, 2008-Ohio-4539, ¶ 7. "Stopping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of the Fourth and Fourteenth Amendments." *State v. Fulton*, 2025-Ohio-1707, ¶ 14 (11th Dist.). "[I]f an officer's decision to stop a motorist for a criminal violation . . . is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Mays* at ¶ 8.

{¶22} Nix's argument primarily relies on the proposition that a "hunch" of drug activity is insufficient to establish reasonable suspicion. For example, he cites *State v. Kaine*, 2008-Ohio-5486 (8th Dist.), wherein detectives observed the defendant pulling into a parking lot in a high drug area and an individual enter the passenger side for approximately 30 seconds. The court found no reasonable suspicion to stop the defendant because officers observed no drug-related activity. *Id.* at ¶ 10-12. Further, in *State v. Jones*, 70 Ohio App.3d 554 (2d Dist. 1990), an officer observed the defendant in a car with a person who had been convicted of drug offenses, in a high crime area, with an individual leaning into the passenger side. *Id.* at 556. The court found no reasonable suspicion since the stop was based on an "unarticulated hunch." *Id.* at 559.

{¶23} The foregoing cases are distinguishable. In both cases, officers did not observe money or suspected drugs changing hands, nor were the incidents part of a controlled drug buy. Here, it was not the case that the officers merely had a "hunch" that criminal activity occurred. Instead, the officers had already established through planning the controlled buy that it was likely a drug transaction would occur and Special Agent 91

Case No. 2024-L-092

witnessed that the informant engaged in an interaction with Nix by giving him money through his vehicle window and receiving an item in exchange. While it was of course impossible to immediately verify that the substance given to the informant was cocaine, this activity provided at least reasonable suspicion that a drug sale occurred, which gave rise to the stop of the tan/beige Toyota described as involved in the transaction. In a similar matter, *State v. Little*, 2023-Ohio-4098 (11th Dist.), this court found reasonable suspicion where officers conducting an interdiction operation observed the defendant, recognized from prior controlled buys, inside of a vehicle, and an officer "directly observed a possible hand-to-hand drug transaction in the hotel parking lot" between the defendant and two women. *Id.* at ¶ 43. Similarly, we find reasonable suspicion existed here.

{¶24} Nix also argues that there "was no testimony to support a finding that police engaged in the stop were aware that criminal activity took place" and Officer Eden was "merely . . . told to stop a vehicle in which a black male was a passenger . . . [and] did not personally witness anything further." Eden was not required to observe the criminal activity himself to have reasonable suspicion given Special Agent 91's observation of the suspected drug transaction. Pursuant to the collective knowledge doctrine, "knowledge of law enforcement officers is imputed to other officers.'" *State v. Muldrow*, 2016-Ohio-4774, ¶ 18 (10th Dist.); *State v. Brown*, 2007-Ohio-464, ¶ 34 (11th Dist.) ("it is the collective knowledge of the law-enforcement officers that allows the arresting officer to rely upon those facts to effect an arrest"). If one officer has enough information to establish reasonable suspicion and instructs another to act, the doctrine of constructive knowledge applies as long as "the officer who provided the information had a valid reasonable suspicion of criminal activity." (Citation omitted.) *State v. Harrell*, 2024-Ohio-

Case No. 2024-L-092

981, ¶ 47 (2d Dist.).  That occurred in the present matter.

**Probable Cause to Search**

{¶25}  Nix also argues that the officers lacked probable cause to conduct a search of his vehicle under the automobile exception because there was no indication that contraband would be found in the vehicle.

{¶26}  "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement."  *State v. Moore*, 90 Ohio St.3d 47, 51 (2000).  In the context of an automobile search, probable cause has been defined as "a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile . . . contains that which by law is subject to seizure and destruction."  *State v. Kessler*, 53 Ohio St.2d 204, 208 (1978), quoting *Carroll v. United States*, 267 U.S. 132, 149 (1925).  "The determination of probable cause is fact-dependent and turns on what the officers knew at the time they conducted a search." (Citation omitted.)  *State v. Huber*, 2019-Ohio-270, ¶ 20 (11th Dist.).

{¶27}  As described above, there were several facts demonstrating probable cause to believe Nix had drugs in his vehicle.  Given the knowledge that Nix had participated in a probable drug transaction in his vehicle a few minutes before police conducted the search, it was likely he may have had additional drugs inside of the vehicle.  There was also testimony that a positive alert occurred during the drug sniff after police stopped the vehicle.  The facts known to the officers at the time of the stop provided probable cause to search the vehicle.  *See State v. Williams*, 2011-Ohio-4126, ¶ 16-18 (8th Dist.) (officers had probable cause to search the defendant's vehicle where they set

Case No. 2024-L-092

up a drug sale with the defendant as target, the officers observed the defendant's vehicle at all times during the sale, and the informant indicated through a gesture that the drug buy had taken place). Further, while Nix reiterates his argument that Eden was unaware of what criminal activity had taken place, Agent 91's knowledge of the drug transaction was imputed to him. *Brown*, 2007-Ohio-464, at ¶ 34 (11th Dist.).

{¶28} The first assignment of error is without merit.

**Reconsideration of Motion to Suppress**

{¶29} In his second assignment of error, Nix argues that the trial court should have reconsidered its suppression ruling when trial testimony established that the informant was left alone inside his residence prior to the buy and he could have "put crack cocaine from the house in his pocket to complete the controlled buy."

{¶30} "The decision whether to re-open a suppression hearing rests within the sound discretion of the court, and will not be disturbed absent an abuse of discretion." *State v. Bangera*, 2016-Ohio-4596, ¶ 72 (11th Dist.).

{¶31} It is accurate that Special Agent 91 did not testify regarding the informant's return to his home prior to the drug buy during the suppression hearing. Nonetheless, we find no abuse of discretion. We recognize the concerns raised by Nix in relation to the credibility of "known informants" or informants seeking to exchange information for favorable outcomes in their cases. It has been observed that the veracity of such informants is a legitimate concern, although a totality of the circumstances approach must be applied to determine whether there is a reasonable suspicion for a stop. *Maumee v. Weisner*, 87 Ohio St.3d 295, 299-300 (1999). While Nix argues that the informant's conduct of entering his home, coupled with concerns of an ulterior motive to receive the

Case No. 2024-L-092

benefit of completing the drug buy successfully, may demonstrate the informant had his own drugs on his person at the time of the buy, the facts tended to demonstrate that Nix provided drugs in the buy since he accepted money from the informant prior to giving the informant an envelope.  Agent 91 testified that the envelope containing cocaine provided by the informant was consistent with the one Nix handed to the informant on the live feed.  Further, Agent 91 testified that he had checked the informant's person after the buy and he did not recover any other envelope or item that could otherwise explain the item purchased from Nix.  These facts overcome potential concerns about the informant's credibility.  *See State v. Johnson*, 2005-Ohio-2077, ¶ 12 (11th Dist.) (finding reasonable suspicion where a confidential informant provided a tip and police officers confirmed the information provided by the informant).

{¶32}  Nix also argues that there was a lack of probable cause or reasonable suspicion since the evidence did not show that all portions of the transaction occurred in plain sight.  However, as noted above, Special Agent 91 was able to observe the entirety of the drug transaction, from the passing of the money to Nix and the object to the confidential informant.  These observations are not invalidated by conduct or actions that may have taken place prior to the transaction.  While Nix argues it was not clear what item he passed to the informant, the character of the transaction between the informant and Nix provided reasonable suspicion and probable cause to determine that it contained drugs.  After viewing the totality of the evidence presented with the additional information by Agent 91 at trial, we do not find the trial court abused its discretion in deciding not to reopen the issue of suppression.

{¶33}  The second assignment of error is without merit.

Case No. 2024-L-092

**Evidence in Support of Conviction for Drug Trafficking**

{¶34} In his third assignment of error, Nix argues that the manifest weight of the evidence did not support a drug trafficking conviction because the State failed to demonstrate that the cocaine recovered from the informant belonged to Nix rather than the informant.

{¶35} "[W]eight of the evidence addresses the evidence's effect of inducing belief." (Citation omitted.) *State v. Wilson*, 2007-Ohio-2202, ¶ 25. An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶36} To sustain a conviction for trafficking, the weight of the evidence must support the conclusion that Nix did knowingly "[s]ell or offer to sell a controlled substance or a controlled substance analog." R.C. 2925.03(A)(1).

{¶37} In the present matter, the record contained significant evidence to establish that Nix sold crack cocaine to the informant. Specifically, the evidence demonstrated that the informant provided information to the Lake County Narcotics Agency that he would be able to purchase crack cocaine from Nix, that recorded funds were provided to the informant, that the informant gave those funds to Nix, and that Nix handed a small package to the informant which was later found to contain cocaine. Further, Nix was found to be in possession of additional cocaine in the vehicle, buttressing a conclusion that he was trafficking cocaine.

Case No. 2024-L-092

{¶38} Nix argues that, because the informant was left alone in his residence prior to the controlled buy, he could have had cocaine on his person and handed that over to Special Agent 91 after the transaction ended in order to achieve a favorable recommendation in his own criminal matter. While this is certainly possible, it does not follow that the conviction was against the weight of the evidence. Nix's argument fails to explain what transaction occurred between himself and the informant or why the informant would have approached his car, handed him money, and received an item identified during the buy as consistent with drugs/drug packaging. It is also a reasonable conclusion that Nix gave the informant cocaine in exchange for money when Nix had additional cocaine in his possession when arrested just a few minutes after the drug buy.

{¶39} The third assignment of error is without merit.

{¶40} For the foregoing reasons, the denial of Nix's motion to suppress and his convictions for Possession of Cocaine and Trafficking in Cocaine in the Lake County Court of Common Pleas are affirmed. Costs to be taxed against appellant.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

| **THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY** |
| :---: |
| A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure. |

Case No. 2024-L-092